[Crim. No. 693. First Appellate District.—December 3, 1917.]

THE PEOPLE, Respondent, v. JOSEPH PEDONE, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE—USE OF DIFFERENT NAMES—HARMLESS CROSS-EXAMINATION OF DEFENDANT.—In a prosecution for murder, it was not reversible error to permit the defendant to be cross-examined, over the objection of his counsel, as to whether he had not at various times and at different places been known by other names than that given by him on direct examination, where the evidence overwhelmingly showed the defendant's guilt.

ID.— OPENING STATEMENT OF PROSECUTING ATTORNEY — REFERENCE TO PROOF OF INADMISSIBLE LETTERS—LACK OF PREJUDICE—ADMONITION OF COURT.—In a prosecution for murder, the defendant was not prejudiced by the opening statement of the prosecuting attorney that the people hoped to prove that defendant with others had en-

tered into a conspiracy to murder the deceased because he had refused to pay them two thousand dollars that they had demanded of him as "Black-hand" money, and that it would be shown that shortly before the homicide they had caused to be sent to the deceased letters, in which it was stated that unless deceased deposited the money at a certain place a terrible tragedy would occur in his family, notwithstanding such letters were not admissible in evidence, where the court at once instructed the jury that the statement was not evidence, and that they were so advised.

ID.—APPEAL—ACTS OF MISCONDUCT—WAIVER.—On an appeal in a criminal action, acts of misconduct of the district attorney occurring during the trial are deemed to have been waived where such acts were not assigned as misconduct at that time.

ID.—INSTRUCTION TO DISREGARD MISCONDUCT — PRESUMPTION ON APPEAL.—On an appeal in a criminal action it will ordinarily be presumed that the jury followed the court's admonition to disregard the misconduct of the district attorney.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Pat R. Parker, Judge Presiding.

The facts are stated in the opinion of the court.

C. V. Riccardi, and Jeff. L. Maloy, for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, and James F. Brennan, for Respondent.

KERRIGAN, J.—Defendant was jointly indicted with his brother, Antone Pedone, Sr., and the latter's son, Antone Pedone, Jr., for the crime of murder, it being alleged that on the thirtieth day of November, 1916, at the city and county of San Francisco, they killed Gaetano Ingrassia. Defendant demanded a separate trial, which being duly had, the jury returned a verdict finding him guilty of murder in the first degree and fixing his punishment at life imprisonment. He now appeals from said judgment and the order denying his motion for a new trial.

The defendant testified at the trial in his own behalf and claimed that the deceased, being a stranger to him, was the aggressor in the encounter which led to his death, and that he, the defendant, took his life only in self-defense. On the other hand, the testimony introduced on behalf of the People showed that the deceased was without warning set upon by

the three Pedones, who were armed with pistols and a rifle, and was killed with these weapons, two of the wounds being received by the deceased after he was disabled and was lying prostrate upon the ground behind some chicken-coops in front of a grocery-store, where he had taken refuge.

There is no claim—nor could there be—that the evidence does not sustain the verdict. In fact, the record overwhelmingly shows that the deceased was brutally murdered, and that the defendant was guilty of the crime.

On direct examination the defendant gave his name as Joseph Pedone. On cross-examination the prosecuting officer, over the objection of defendant's counsel, was allowed to ask him if he had not at various times and different places been known by other names, to each of which questions he answered in the negative. It has been quite recently held by our supreme court that such cross-examination ordinarily is not proper (*People* v. *Mohr*, 157 Cal. 732, [109 Pac. 476]; *People* v. *Fleming*, 166 Cal. 381, [Ann. Cas. 1915B, 881, 136 Pac. 291]; *contra*, *People* v. *Meyer*, 75 Cal. 383, [17 Pac. 431]); but the case at bar, we think, is readily distinguishable from the Mohr and Fleming cases. In those cases the cross-examination of the defendants was attended by circumstances prejudicial to them. In the Mohr case the entire cross-examination consisted of an attempt to show that the defendant had been known by a number of different names, and it was conducted in such a manner as to indicate to the jury that the prosecuting officer was in a position to show by written data that the unfavorable intimations contained in the questions were true. The court said: "It appears . . . that these questions were asked in such a manner as to indicate that the district attorney had in his hands at the time he asked the questions written data to support the same."

In the Fleming case the defendant answered a similar question in the affirmative, and was compelled to make an explanation of why he had gone under an assumed name, which explanation brought out a circumstance which reflected discreditably upon him. That case, too, on the evidence was very close—unlike the present one—and grave doubt was entertained by the appellate court as to the defendant's guilt. It concluded, therefore, that it was only reasonable to infer that the explanation drawn from the defendant materially contributed to the verdict. For that and other reasons the

judgment was reversed. No such condition here exists and the act of the district attorney complained of does not constitute reversible error.

In his opening statement the prosecuting officer told the jury that the people hoped to prove that the defendant with his brother and nephew had entered into a conspiracy to murder the deceased, because "he had refused to pay them two thousand dollars that they had demanded of him as Blackhand money"; that it would be shown that the Pedones shortly before the homicide had caused to be sent to the deceased letters, in which it was stated that unless the deceased deposited at a certain place two thousand dollars a terrible tragedy would occur in his family, and that on the very day of the murder the deceased had received one of those letters, which was in his possession at the time of his death. At the time this statement was made defendant's counsel objected to it—without, however, assigning the making of it as misconduct—saying that the prosecuting officer knew that these letters were not admissible in evidence, and that they had been offered in evidence in the trial of one of the other persons charged with this crime held before another judge, and rejected. During the trial the letters were in fact offered in evidence, although not in the presence of the jury, and rejected for the reason that the people failed to show that the defendant either sent or caused them to be sent to the deceased.

We are unable to say that the prosecuting attorney acted in bad faith in making this statement to the jury of what he would show to them; but in any event, and whatever motive may have prompted the observation, we are satisfied that no substantial injury resulted to the defendant therefrom, for the court at once instructed the jury that the statement was not evidence; that they, the jury, as reasonable and intelligent men knew as much, but that if they did not they were so advised; and added, "You are instructed at this time that any statement of counsel is not evidence. Counsel is stating to you on behalf of the people the facts that he intends to prove, which by no means are to be considered by you men as having been proved."

Early in the trial of the case, and doubtless in order to establish a motive for the crime, the people introduced evidence tending to show that the deceased was a man of some

means, owning a piece of real property and having four thousand dollars on deposit in a bank; but upon it appearing that the prosecution was unable to prove that the deceased was generally reputed to be a man of wealth, or that the defendant knew anything about his financial condition, the court struck out this testimony and cautioned the jury to disregard it.

Another act of the prosecuting officer is argued in the defendant's brief as constituting misconduct, but little attention appears to have been paid to the matter at the time it occurred, and it was not assigned as such. In fact, none of the acts of the prosecuting officer now complained of as misconduct were so characterized at the time they occurred, and in every instance except the one just referred to the court struck out the objectionable matter, and of its own motion promptly and emphatically instructed the jury to disregard it.

It is well settled in this state that the defendant not having during the trial assigned as misconduct the acts now objected to, he must be deemed to have waived any objection thereto; and that even if he had made such assignment, the trial court having cautioned the jury as to its duty in the premises, it will ordinarily be presumed upon appeal that the jury followed the court's admonition, and that no prejudice, therefore, resulted to the defendant in the trial of his case.

In conclusion, it may be added that while we think the prosecuting attorney overstepped the bounds of strict legal propriety in some of the instances pointed out by the defendant, yet, as before stated, a review of the record satisfies us, particularly in view of the prompt action of the trial court in reference thereto, that neither the misconduct of the prosecutor nor the cross-examination of the defendant in respect of his being known by another name had any appreciable effect upon the jury in the consideration of their verdict.

The judgment and order are affirmed.

Lennon, P. J., and Richards, J., concurred.